UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHGIAN
SOUTHERN DIVISION

_____

**KATINA WILSON,**
an individual;

        Plaintiff,

v.

**OTSEGO PUBLIC SCHOOLS BOARD OF EDUCATION**,
**OTSEGO PUBLIC SCHOOLS,**
and **CHRISTIE ROBINSON,**
in her individual and official capacities.

        Defendants.

Case No. 1:26-CV-188

Hon.

_____

## COMPLAINT AND JURY DEMAND
_____

### Complaint

Plaintiff Katina 'Tina" Wilson, by and through her attorneys, Pinsky Smith, PC, states as follows:

### Jurisdiction, Venue, and Parties

1.    This is an action requesting the Court to remedy violations of Plaintiff's right to Due Process of Law under the Fourteenth Amendment of the Constitution, pursuant to 42 U.S.C. § 1983; and to remedy factually related breaches of contract under Michigan's common law and Michigan's Open Meetings Act, Mich. Comp. Laws § 15.263 et seq. ("OMA").

1

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3. Plaintiff is a resident of Van Buren County in the Western District of Michigan, Southern Division.

4. Defendant Otsego Public Schools Board of Education ("the Board") is a public school board organized under Michigan law which operates Defendant Otsego Public Schools ("OPS") within Allegan and Kalamazoo Counties in the Western District of Michigan, Northern Division.

5. Defendant Christie Robinson is the Superintendent of OPS, and she works within Kalamazoo and Allegan Counties in Michigan.

6. The acts that are the subject of this action occurred in the Western District of Michigan.

7. Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

8. OPS employed Plaintiff from May 14, 2025 until November 11, 2025 as the Director of Finance, where she reported to the Superintendent. OPS hired Plaintiff away from working at Bloomingdale Public Schools mid-school year, where Plaintiff was then reporting to Superintendent Rick Reo. Mr. Reo began employment at Bloomingdale on October 1, 2024, after the prior school district employing Mr. Reo forced him to resign in lieu of termination. For a number of reasons, Plaintiff did not like reporting to Mr. Reo, even though she enjoyed her work at Bloomingdale.

9. At the time that Plaintiff began work at OPS, she reported to Defendant Robinson's predecessor, Jeff Haase, and the terms and conditions of Plaintiff's employment were governed by a written contract ("the Contract"), which included a 12-month term and multiple other provisions. (Ex. A.)

10. Defendant Robinson became Plaintiff's supervisor in or about July 2025 when Superintendent Haase retired.

11. Prior to Mr. Haase's retirement, Plaintiff advised him that Mr. Reo contacted Plaintiff and was attempting to extort her into performing additional, free work for Bloomingdale on her personal time. When Plaintiff initially gave her notice to resign from employment mid-year at Bloomingdale, Mr. Reo initially spoke to her about performing some continuing work on a contract basis after her work hours for OPS, to bridge the gap until Bloomingdale hired a replacement. Plaintiff first said she would do so, but Mr. Reo was not willing to offer a reasonable wage for the work, and their talks broke down. Mr. Reo was upset that Plaintiff would not perform this continuing work for a low amount of money, and he threatened Plaintiff with a breach of contract lawsuit after she began employment at OPS. Plaintiff kept Mr. Haase informed of Mr. Reo's threats to her.

12. In September 2025, Defendant Robinson approached Plaintiff and asked her about alleged rumors she said she had heard regarding Plaintiff's employment at Bloomingdale, which were false. Defendant Robinson eventually admitted that the source of her allegations was Mr. Reo. Defendant Robinson was very hostile and threatening, and even told Plaintiff that she was being investigated

3

by police, which Plaintiff believes to be entirely false. While Plaintiff initially tried to refute what Defendant Robinson said in their conversation, Defendant Robinson simply would not listen or continue the conversation in a productive manner. So Plaintiff sent a formal, written response to her allegations on September 8, 2025.

13.     During the financial audit of OPS in October 2025, the auditor had asked Plaintiff to confirm there was no revenue to OPS from the summer food service program, as there was nothing that had been recorded for this. Plaintiff followed up with the OPS Food Service Manager, who told Plaintiff that the previous Director of Finance had filed reports on this revenue. Plaintiff did not have access to the food service claim system until September 2025, as OPS was paying Plaintiff's predecessor to do these during the summer of 2025. Plaintiff investigated further, and she was finally able to figure out that revenue reports had not been done and immediately took steps to correct this. The Food Service Manager reported directly to Plaintiff, so Plaintiff had a corrective conversation with Food Service Manager about the situation and how it could have been prevented, and then took steps with the State of Michigan to assure OPS didn't lose these funds. Plaintiff took all steps necessary to remediate the situation and considered the matter closed.

14.     On November 5, 2025, Defendant Robinson again confronted Plaintiff is an accusatory, hostile meeting, slamming papers around, and alleging that Plaintiff had covered something up related to the summer food service reports, which she had not, and that she had told the Food Service Manager "not to tell"

anyone what happened, which she had not. Plaintiff asked Defendant Robinson to bring in the employee who had knowledge of this situation to talk to her together, as it seemed that Defendant Robinson was embellishing a non-issue and trying to frustrate Plaintiff enough to quit, or to induce Plaintiff say something insubordinate to try to gin up justification to fire Plaintiff. Defendant Robinson's tone was mocking and unprofessional, and her accusations were ludicrous, charging that Plaintiff had said some ridiculous, cartoon-villain-style comments to her direct report. Defendant Robinson finally agreed to check with the employee about the situation, but instructed Plaintiff not to report to the office until she was told to come back to work.

15. Late evening on November 6, 2025, Defendant Robinson texted Plaintiff and told her to meet with her at 3:30 p.m. the following day.

16. When Plaintiff arrived at the meeting the next day, Defendant Robinson told her she was being fired and tried to induce Plaintiff to resign instead. Plaintiff refused to resign, so Defendant told her that the termination would happen at Board's public meeting on Monday, November 10, 2025. Plaintiff advised Defendant Robinson that she would talk to an attorney and attend the meeting to present to the Board.

17. Plaintiff attended the public Board meeting on November 10, 2025, and she arrived as the Pledge of Allegiance was being said to open the meeting. She had to walk in front of the Board on her way in, where she was clearly seen by Defendant Robinson and the entire Board.

18. Plaintiff waited through the entire public Board meeting for an item to be introduced at the meeting to address Defendant Robinson's desire to fire Plaintiff, and to be given the opportunity to address the Board, but Plaintiff's name was never mentioned and no member of the Board ever raised the issue. At one point, the Board entertained a motion to approve Human Resources matters, and they voted to approve the motion without any further discussion about what that meant. But that was the extent of anything that happened during the public meeting which could have potentially pertained to Plaintiff's employment.

19. On November 11, 2025, Defendant Robinson emailed Plaintiff a letter notifying Plaintiff that the District was terminating her employment pursuant to Section 9b of her employment contract, and said her termination was without cause.

20. Defendant Robinson's letter notifying Plaintiff of her termination stated that November 5, 2025 was the last date that Plaintiff reported to work. However, Defendant Robinson told Plaintiff not to report to work as of November 5, 2025, until Defendant Robinson notified Plaintiff otherwise. Plaintiff cooperated with that directive, even though she was ready, able, and willing to work through and after her termination.

21. Section 9b of the Contract states that OPS may terminate Plaintiff without cause. However, under Section 9b, "Employer may terminate this Agreement without cause upon thirty (30) days' notice to the Employee." Defendants did not provide the notice required by the Contract before terminating Plaintiff's employment.

6

22.    OPS paid 30 days of compensation to Plaintiff after it fired her. However, it is inconsequential that OPS paid Plaintiff for 30 days after termination, through December 9, 2025. It was still a breach of the Contract for OPS to fire Plaintiff prior to giving 30 days of actual notice of termination without cause. Among other benefits, providing Plaintiff the notice to which she was entitled under the Contract prior to termination without cause would have permitted her to look for other work while still an employee of OPS and while still having health insurance coverage.

23.    Under the plain language of Plaintiff's employment contract, OPS could terminate her immediately and without notice if it did so for "just cause," as provided in Section 9c of the Contract. Upon information and belief, the Board and/or Defendant Robinson placed an agenda item on a version of the agenda that was prepared for the November 10, 2025 public board meeting, but which was not released to the public, to discuss firing Plaintiff.

24.    Upon information and belief, Defendant Robinson presented her alleged reasons to the Board that allegedly justified firing Plaintiff, but did so during a private meeting with the Board prior to the open and public meeting of the Board, instead of as part of the open, public meeting.

25.    Eventually, the Board and/or Defendant Robinson, or someone acting at their direction, removed the agenda item to discuss firing Plaintiff from the version of the meeting agenda which was released to the public.

26.     Defendants had no valid cause, "just cause" or otherwise, to terminate Plaintiff's employment. Defendants denied Plaintiff adequate notice of the official justifications for termination. Defendants also denied Plaintiff an opportunity to be heard on her contrary evidence, either prior to, during, and/or after Defendant Robinson's presentation to a quorum of the Board, conducted in secret and out of public view, as to her alleged reasons to fire Plaintiff.

27.     Upon information and belief, under the actual, non-public events which led to Plaintiff's termination, Defendants – in reality – fired Plaintiff pursuant to the "for Cause" provision of the Contract, even though OPS did not have "just cause" as required by the Contract and did not comply with Plaintiff's rights to due process, pursuant to the *Loudermill v. Cleveland Board of Education* case.

28.     Upon information and belief, Defendants OPS and the Board rubber-stamped and approved Defendant Robinson's recommendation to fire Plaintiff with a quorum of the Board's input, but without doing so in a public meeting or announcing the actual decision in a way that informed the public of the decision that the Board made.

29.     Upon information and belief, the Board approved minutes from its November 10, 2025 meeting at its meeting on November 25, 2025.

### COUNT I – VIOLATION OF DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE CONSTITUTION

30.     Plaintiff relies on all prior allegations as if restated herein.

8

31.     Once Defendants fired Plaintiff without at least 30 days of notice, Plaintiff had a property interest in her employment pursuant to the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and *Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985) ("*Loudermill*"). Without 30 days of advance notice, Defendants could only lawfully terminate Plaintiff's job position if they did so after providing her required due process of law, and if they had a "just cause" reason for firing her.

32.     On November 11, 2025, Defendants discharged Plaintiff without providing her with either a fair pre-termination notice and hearing, and/or post-termination hearing, contrary to the Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983; and *Loudermill*, thereby depriving her of due process of law. Defendants discharged Plaintiff without having sufficient cause and reason for the termination.

33.     As a result of Defendants' failure to provide a fair pre-termination and/or post-termination due process, Defendants are liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits and/or reinstatement to her prior or equivalent position; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

34.     Similarly, as a result of Defendants' failure to have sufficient cause and reason for Plaintiff's termination, Defendants are liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits and/or

reinstatement to her prior or equivalent position; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

WHEREFORE, Plaintiff requests that the Court restore her to her job position and grant her relief in an amount as determined by a jury, including reasonable attorney's fees and costs, plus interest and costs, pursuant to 42 U.S.C. § 1988.

## COUNT II – BREACH OF CONTRACT

35. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

36. Plaintiff's 12-month employment contract with Defendants provided for either 30 days of notice prior to termination if Defendants chose to fire her without cause, or to be fired only for just cause.

37. Defendants terminated Plaintiff's employment without 30 days of notice and without just cause, without appropriate notice of its alleged reasons for the termination, and without an opportunity to dispute those reasons through a hearing of some kind providing sufficient due process – either before or after the firing.

38. Defendants breached the Contract and caused damages to Plaintiff. WHEREFORE, Plaintiff requests that the Court grant her relief against Defendants in an amount as determined by a jury, plus interest and costs, and all other appropriate relief.

## COUNT III – VIOLATION OF THE OPEN MEETINGS ACT, MCL 15.261 et seq. as to Defendants OPS and Otsego Public Schools Board of Education

39. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

40. Upon information and belief, a quorum of Defendant Otsego Public Schools Board of Education met secretly and out of public view prior to the November 10, 2025 public board meeting. Any actual vote to approve of firing Plaintiff occurred, or indication of consensus approval by the Board to Defendant Robinson to fire Plaintiff, occurred before the public meeting began and out of public view.

41. Defendant Board's vote during the meeting to approve Human Resources actions as a summary action item during the meeting – without any further description of any kind – did not inform the public of the nature of its decision to fire Plaintiff, deprived the public of seeing the deliberation leading to any decision to terminate Plaintiff, and failed to comply with the Open Meetings Act for that additional reason.

42. Defendant Board also failed to give Plaintiff any opportunity to address the Board, despite Plaintiff being present during the meeting and visible to Defendant Robinson and the Board, and telling Defendant Robinson she would be there to address the Board.

43. Defendants' actions violated the Open Meetings Act's requirement that all deliberations constituting a quorum and decisions of any kind by the Board take place at an open, public meeting.

44. Defendants' violations of the Open Meetings Act were intentional. MCL 15.273.

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Declare that Defendants OPS and Otsego Public Schools Board of Education violated the Open Meetings Act;

B. Compel Defendants to comply with the Open Meetings Act;

C. Enjoin further non-compliance with the Open Meetings Act;

D. Invalidate the decision of the Board of Education to approve the termination of Plaintiff's employment, and invalidate the termination itself;

E. Award Plaintiff actual and exemplary damages;

F. Award Plaintiff costs and reasonable attorney fees; and

G. Award Plaintiff such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: January 16, 2026

By: /s/ Sarah R. Howard
Sarah Riley Howard
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

                                              PINSKY SMITH, PC
                                              Attorneys for Plaintiff

Dated: January 16, 2026            By:   /s/ Sarah R. Howard
                                              Sarah Riley Howard
                                              146 Monroe Center St NW, Suite 418
                                              Grand Rapids, MI 49503
                                              (616) 451-8496
                                              showard@pinskysmith.com